IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BRIAN J. STREETER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PREMIER SERVICES, INC. and<br>TUR-PAK FOODS, INC.,<br><br>　　　　Defendants. | No. C12-4097-LTS<br><br>***MEMORANDUM OPINION AND<br>ORDER GRANTING SUMMARY<br>JUDGMENT IN FAVOR OF<br>DEFENDANT TUR-PAK FOODS,<br>INC.*** |

### *INTRODUCTION*

Defendant Tur-Pak Foods, Inc. (Tur-Pak) filed a pre-answer motion to dismiss (Doc. No. 14) that has been converted to a motion for summary judgment. *See* Doc. Nos. 17 and 19. Plaintiff Brian J. Streeter, proceeding *pro se* in this case, has not filed a response to the motion. The deadline for his resistance expired long ago. As such, and as Streeter was advised by order (Doc. No. 31) issued July 29, 2013, the motion could be granted without further discussion or analysis pursuant to Local Rule 7(f).[1] Because Streeter is proceeding *pro se*, however, I will accord him the benefit of the doubt by addressing the issues raised in Tur-Pak's motion.

---

[1] Local Rule 7(f) states:

> **Unresisted Motions**. If no timely resistance to a motion is filed, the motion may be granted without notice. If a party does not intend to resist a motion, the party is encouraged to file a statement indicating the motion will not be resisted.

## PROCEDURAL HISTORY

On October 30, 2012, Streeter filed a *pro se* application (Doc. No. 1) for leave to proceed *in forma pauperis*. The motion consisted of an incomplete application, a cover letter to the court and various attachments. Streeter did not file a complaint, as required by Federal Rule of Civil Procedure 3. On November 1, 2012, I filed an order (Doc. No. 2) pointing out the deficiencies in Streeter's application to proceed *in forma pauperis*. I also addressed Streeter's failure to file a complaint and referred him to the rules of procedure that describe this requirement. I ordered Streeter to cure these deficiencies no later than November 16, 2012, by filing (a) an amended and substituted *in forma pauperis* application and (b) a "complaint that fully pleads a claim for relief."

On November 6, 2012, Streeter filed a "Complaint" that stated: "Denied Medical Leave resulting in job termination and seek restitution in this matter from Prememier [sic] Staffing Services and Tur-Pak Foods, Inc." Doc. No. 3-1. He also filed an amended application to proceed *in forma pauperis*. Doc. No. 3-2. On November 21, 2012, I filed an order (Doc. No. 4) addressing these filings. I granted Streeter's application to proceed *in forma pauperis* and directed him to pay monthly installment payments until the full filing fee is paid. However, I found Streeter's one-sentence complaint to be deficient and ordered him to file an amended complaint by December 10, 2012. Doc. No. 4 at 5.

On December 3, 2012, Streeter filed an amended complaint (Doc. No. 6). The amended complaint was worse than the original. The body of the document contained seven words: "I was denied Medical Leave and terminated." *Id.* On December 4, 2012, I issued an order (Doc. No. 7) giving Streeter once last chance to file a suitable complaint. He filed a second amended complaint (Doc. No. 8) on December 12, 2012, that states:

> The Equal Employment Opportunity Commission has given me a Dismissal and Notice of Rights dated September 28 2012 following an 18 month investigation I wish to exercise my Notice of Suit Rights within 90 days I did contact 3 attorneys and was declined representation they apparently represent these companies I made the arrangements to leave and miss work with each office prior to going to my medical appointment at the Department of Veterans Affairs Outpatient Clinic in Sioux City Iowa having a 30 percent Service Connected disability being a Disabled American Veteran and have been awarded the Kosovo Campaign Medal in 2000 which entitles me to Veteran Preference Law and other entitlements as noted on DD214 working on the 1st shift at Tur Pak Foods Incorporated on the day of my appointment after my appointment at the clinic I returned to Premier Staffing Agency and they sent me to 2nd shift at Tur Pak Foods Incorporated the 2nd shift Supervisor said I wasn't approved to work on 2nd shift and I was terminated in addition the Equal Employment Opportunity Commissions Investigator stated I had checked NO on my job application regarding Mental Disability when I have 30 percent Service Connected disability submitted is this Certificate establishing Civil Service Preference dated November 16 2007 establishing these benefits submitted are two letters from the Iowa Civil Rights Commission concerning this complaint furthermore on January 21 2011 I was awarded Social Security Disability and Medicare benefits Fully Favorable by the Administrative Law Judge submitted is all documentation in reference of these statements and decisions after 6 years of hardships corruption immorality religion falsehood deceit back stabbing corporations scheming no understanding survival bad living eviction harassment unemployment and confusion I want relief from these **damages** of $ 25 million dollars that these companies have caused similarly while working at Lowe's in Sioux City Iowa they checked NO on the request form when I requested Medical Leave for an appointment at the Department of Veterans Affairs I mailed a copy of the request form to attorney Karen Dales in Council Bluffs Iowa gave her a $ 2500 retainer fee she wanted everything she didn't take the case and I lost the retainer fee again I wasn't awarded anything for these **damages.**

*Id.* While this second amended complaint still fell short of basic pleading requirements, in light of Streeter's *pro se* status I directed that it be served on the named defendants so they could raise any motions or issues they deemed appropriate. Doc. No. 9.

On May 22, 2013, Premier Staffing Services filed an answer and affirmative defenses (Doc. No. 13) in which it admitted that Streeter had been an employee of Premier Staffing Services but denied wrongdoing and liability. Premier Staffing Services later filed an amended answer (Doc. No. 18). On July 11, 2013, Streeter filed a proposed amended complaint (Doc. No. 22) that sought to replace Premier Staffing Services with Premier Services, Inc., as the "Premier" defendant. Premier Staffing Services filed a response (Doc. No. 24) indicating that it did not object to this change, as Premier Services, Inc., is the correct defendant. As such, I granted the motion to amend by order (Doc. No. 26) filed July 23, 2013. Premier Services, Inc. (Premier), then filed an answer and affirmative defenses (Doc. No. 30) with regard to the third

3

amended complaint. Premier admits that it had an employment relationship with Streeter but denies wrongdoing and liability.

Meanwhile, Tur-Pak filed its pre-answer motion to dismiss (Doc. No. 14) on May 28, 2013. Because the motion referenced materials outside the pleadings, it was converted to a motion for summary judgment on May 29, 2013, and Tur-Pak was directed (Doc. No. 17) to file additional supporting materials as required by the rules of procedure. Tur-Pak filed those materials (Doc. No. 19) on June 4, 2013.

Streeter's deadline for resisting Tur-Pak's motion for summary judgment was June 28, 2013. *See* Local Rule 56(b). On July 29, 2013, with no resistance having been filed, Streeter was cautioned (Doc. No. 31) that the motion may be granted as unresisted if he did not submit his resistance by August 9, 2013. No resistance has been filed.

On August 30, 2013, the parties submitted a proposed scheduling order and discovery plan that, among other things, included their unanimous consent to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3). Accordingly, an order of reference to me (Doc. No. 36) was filed September 3, 2013.

## *UNDISPUTED FACTS*

Tur-Pak has filed a statement of undisputed material facts (Doc. No. 19). Because Streeter has not filed a response, all of those facts are deemed admitted for purposes of Tur-Pak's motion. *See* Local Rule 56(b). In addition, Tur-Pak has supported these facts with appropriate evidentiary materials. The undisputed facts are:

1. Tur-Pak is a company with a primary function of further processing of food items using 240 workers.

2. Nathan Phipps, the plant manager, is responsible for work being done in the plant.

4

3. Tur-Pak uses a staffing service (Premier) to fill its staffing for entry level positions.

4. Premier employees are evaluated by Tur-Pak in the 90 days they are employees of Premier to determine if Tur-Pak wants to hire these individuals as employees of Tur-Pak.

5. Streeter worked for Premier at Tur-Pak on three separate occasions:

   A. March 30, 2010, through April 21, 2010 (1st Shift), Voluntary Quit No Call No Show.

   B. October 4, 2010, through November 1, 2010 (2nd Shift), sent back to Premier due to reduction in work force.

   C. December 27, 2010, through January 4, 2011 (1st Shift), Voluntary Quit No Call No Show

6. At no time did Streeter work at Tur-Pak for Premier the 90 days required for Tur-Pak to consider him for employment.

7. On January 5, 2011, Streeter was sent by Premier to start work again on 2nd shift. Tur-Pak sent him back to Premier because he had just had No Call No Show on the previous two days for 1st shift.

8. Tur-Pak's Daily Call in Sheets are used on a daily basis to chart all employees' attendance.

9. The Call in Sheets reflect that on January 3 and 4, 2011, a number of people were No Call No Show on both days. All were considered Voluntary Quit.

10. Tur-Pak's EEO Summary Report from August 2010, and its Summary and Detail Report for the period of December 27, 2010, through December 30, 2010, indicate that Streeter was not the only white person employed at Tur-Pak.

11. At no time did Streeter bring any documentation or verbalize to any Tur-Pak human resources or management employee that he had a disability, let alone a disability that required a reasonable accommodation.

5

12. On Streeter's job application with Premier he denied that he had any disability.

13. Tur-Pak did not allow Streeter to work at the facility on 2nd shift on January 5, 2011, because he had just voluntarily quit the day before on 1st shift.

14. Tur-Pak was unaware of any disabilities Streeter may or may not have had.

15. Streeter was not the only white person employed by Tur-Pak.

16. Streeter filed charges of discrimination with the Iowa Civil Rights Commission and with the Equal Employment Opportunity Commission (EEOC).

17. The EEOC investigated and was unable to conclude the information it obtained established violations of any statute. The Iowa Civil Rights Commission closed its file.

## *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a

6

verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id*. at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts

7

in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis*, *Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## *ANALYSIS*

Reading Streeter's third amended complaint (Doc. No. 27) as generously as possible, it appears that he may be asserting the following claims: (1) violation of the Americans with Disabilities Act (ADA), (2) violation of the Family and Medical Leave Act (FMLA), (3) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and (4) race and disability discrimination in violation of the Iowa Civil Rights Act. Unfortunately, generosity is also required in construing Tur-Pak's summary judgment arguments. Its supporting brief (Doc. No. 14-3), originally filed when Tur-Pak labeled its motion as a pre-answer motion to dismiss, does nothing but discuss the standards for reviewing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. The brief does not even attempt to explain the basis of Tur-Pak's contention that Streeter's claims against it must be dismissed.

Tur-Pak's motion itself (Doc. No. 14) provides the only clue. Tur-Pak states that Streeter was never an employee of Tur-Pak and, instead, was employed by Premier. With no analysis, Tur-Pak concludes that the lack of an employment relationship between Streeter and Tur-Pak requires dismissal of all of Streeter's claims against Tur-Pak. Doc. No. 14 at 2.

It would have been appropriate, and appreciated, for Tur-Pak to cite legal authorities in support of its contention that all of Streeter's claims fail in the absence of an employment relationship. While I am reluctant to reward Tur-Pak for such a glaring omission, its middling effort still exceeds Streeter's complete lack of effort. And,

8

ultimately, Tur-Pak's conclusion is correct. If Streeter was not an employee of Tur-Pak, then Tur-Pak cannot be liable under any of the claims Streeter seems to assert. *See, e.g., Glascock v. Linn Cnty. Emergency Med., P.C.*, 698 F.3d 695 (8th Cir. 2012) (only employees may bring employment discrimination claims under either Title VII or the Iowa Civil Rights Act); *Lerohl v. Friends of Minnesota Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003) (under both the ADA and Title VII, employment discrimination claims require the existence of an employment relationship between plaintiff and defendant); 29 U.S.C. § 2612 (only an "eligible employee" is entitled to FMLA leave); 29 U.S.C. § 2617(a)(2) (only "employees" may maintain an action for FMLA violations).

In addition, the undisputed facts set forth above demonstrate that Tur-Pak would be entitled to entry of summary judgment on the merits of Streeter's claims, even if an employment relationship existed. With regard to Streeter's discrimination claims, he has not established a *prima facie* case by showing that he (1) is a member of a protected class; (2) was meeting Tur-Pak's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of his protected class. *See, e.g., Jackman v. Fifth Judicial Dist. Dept. of Corr. Sers.*, ___ F.3d ___, 2013 WL 4529461 (8th Cir. August 28, 2013); *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 461 (8th Cir. 2010). Nor is there evidence in the record that Tur-Park's stated, nondiscriminatory reason for preventing Streeter from working at Tur-Pak (his No Call No Show the previous day) is pretext. *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010).

As for the FMLA claim, even if Streeter was an employee of Tur-Pak, he would not have been an "eligible employee" until he had been employed by Tur-Pak for at least twelve months and worked at least 1,250 hours during that twelve-month period. *See* 29 U.S.C. § 2611(2)(A); *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 739 (2003) (FMLA leave "applies only to employees who have worked for the employer for at least one year and provided 1,250 hours of service within the last 12 months."). Here, the

9

undisputed facts show that the first day Streeter was employed at Tur-Pak was March 30, 2010. Tur-Pak sent Streeter back to Premier on January 5, 2011, after he failed to call or show for work the previous two days. As of January 5, 2011, Streeter had not worked at Tur-Pak for twelve months. Indeed, he worked at Tur-Pak for only three brief periods of time between March 30, 2010, and January 5, 2011, totaling about sixty days. In short, Streeter would not even arguably have been eligible to demand FMLA leave from Tur-Pak in January 2011.

Streeter was not an employee of Tur-Pak. Even if he was, the undisputed facts in the record demonstrate that all of his claims against Tur-Pak would fail as a matter of law. Tur-Pak is entitled to summary judgment.

## *CONCLUSION*

For the reasons set forth herein, Tur-Pak's motion (Doc. No. 14) for summary judgment, originally styled as a motion to dismiss, is **granted**. Tur-Pak is hereby dismissed from this case.

**IT IS SO ORDERED.**

**DATED** this 6th day of September, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE