IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BRIAN J. STREETER,<br><br>    Plaintiff,<br><br>vs.<br><br>PREMIER SERVICES, INC.,<br><br>    Defendant. | No. C12-4097-LTS<br><br>***MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*** |

*TABLE OF CONTENTS*

*I.   INTRODUCTION ................................................................. 2*

*II.  PROCEDURAL HISTORY .................................................... 2*

*III. UNDISPUTED FACTS ......................................................... 5*

*IV. SUMMARY JUDGMENT STANDARDS ............................... 8*

*V.  ANALYSIS ........................................................................... 10*
    *A.  Disability Discrimination ............................................. 10*
    *B.  Race Discrimination ................................................... 11*
    *C.  Family and Medical Leave Act .................................... 13*

*VI. CONCLUSION .................................................................... 14*

## I. INTRODUCTION

Defendant Premier Services, Inc. (Premier), filed a motion (Doc. No. 43) for summary judgment on February 11, 2014. Plaintiff Brian J. Streeter, proceeding *pro se* in this case, did not file a timely response. On March 11, 2014, I entered an order (Doc. No. 47) reminding Streeter of the need to file a response and establishing a final deadline of March 21, 2014, for him to do so. He filed a two-sentence response (Doc. No. 48) on March 19, 2014, stating, in relevant part, that he has "no objection to a summary judgment by the court as a conclusion to this case and restitution is awarded regarding this matter of Medical Leave." Premier then filed a short reply (Doc. No. 49) in which it pointed out the contradictory nature of Streeter's response and contended that summary judgment is appropriate because Streeter failed to present any evidence establishing a genuine issue of material fact.

No party has requested oral argument and, in any event, I find it to be unnecessary. The motion is fully submitted.

## II. PROCEDURAL HISTORY

On October 30, 2012, Streeter filed a *pro se* application (Doc. No. 1) for leave to proceed *in forma pauperis*. The motion consisted of an incomplete application, a cover letter to the court and various attachments. Streeter did not file a complaint, as required by Federal Rule of Civil Procedure 3. On November 1, 2012, I filed an order (Doc. No. 2) pointing out the deficiencies in Streeter's application to proceed *in forma pauperis*. I also addressed Streeter's failure to file a complaint and referred him to the rules of procedure that describe this requirement. I ordered Streeter to cure these deficiencies no later than November 16, 2012, by filing (a) an amended and substituted *in forma pauperis* application and (b) a "complaint that fully pleads a claim for relief."

On November 6, 2012, Streeter filed a "Complaint" that stated: "Denied Medical Leave resulting in job termination and seek restitution in this matter from Prememier

[sic] Staffing Services and Tur-Pak Foods, Inc." Doc. No. 3-1. He also filed an amended application to proceed *in forma pauperis*. Doc. No. 3-2. On November 21, 2012, I filed an order (Doc. No. 4) addressing these filings. I granted Streeter's application to proceed *in forma pauperis* and directed him to pay monthly installment payments until the full filing fee is paid. However, I found Streeter's one-sentence complaint to be deficient and ordered him to file an amended complaint by December 10, 2012. Doc. No. 4 at 5.

On December 3, 2012, Streeter filed an amended complaint (Doc. No. 6). The amended complaint was worse than the original. The body of the document contained seven words: "I was denied Medical Leave and terminated." *Id.* On December 4, 2012, I issued an order (Doc. No. 7) giving Streeter once last chance to file a suitable complaint. He filed a second amended complaint (Doc. No. 8) on December 12, 2012, that states:

> The Equal Employment Opportunity Commission has given me a Dismissal and Notice of Rights dated September 28 2012 following an 18 month investigation I wish to exercise my Notice of Suit Rights within 90 days I did contact 3 attorneys and was declined representation they apparently represent these companies I made the arrangements to leave and miss work with each office prior to going to my medical appointment at the Department of Veterans Affairs Outpatient Clinic in Sioux City Iowa having a 30 percent Service Connected disability being a Disabled American Veteran and have been awarded the Kosovo Campaign Medal in 2000 which entitles me to Veteran Preference Law and other entitlements as noted on DD214 working on the 1st shift at Tur Pak Foods Incorporated on the day of my appointment after my appointment at the clinic I returned to Premier Staffing Agency and they sent me to 2nd shift at Tur Pak Foods Incorporated the 2nd shift Supervisor said I wasn't approved to work on 2nd shift and I was terminated in addition the Equal Employment Opportunity Commissions Investigator stated I had checked NO on my job application regarding Mental Disability when I have 30 percent Service Connected disability submitted is this Certificate establishing Civil Service Preference dated November 16 2007 establishing these benefits submitted are two letters from the Iowa Civil Rights Commission concerning this complaint furthermore on January 21 2011 I was awarded Social Security Disability and Medicare benefits Fully Favorable by the Administrative Law Judge submitted is all documentation in reference of these statements and decisions after 6 years of hardships corruption immorality religion falsehood deceit back stabbing corporations scheming no understanding survival bad living eviction harassment unemployment and confusion I want relief from these **damages** of $ 25 million dollars that these companies have caused similarly while working at Lowe's in Sioux City Iowa they checked NO on the request form when I requested Medical Leave for an appointment at the Department of Veterans Affairs I mailed a copy of the request form to attorney Karen Dales in Council Bluffs Iowa gave her a $ 2500 retainer fee she wanted everything she didn't take the case and I lost the retainer fee again I wasn't awarded anything for these **damages.**

3

*Id.* While this second amended complaint still fell short of basic pleading requirements, in light of Streeter's *pro se* status I directed that it be served on the named defendants so they could raise any issues they deemed appropriate. Doc. No. 9.

On May 22, 2013, Premier Staffing Services filed an answer and affirmative defenses (Doc. No. 13) in which it admitted that Streeter had been an employee of Premier Staffing Services but denied wrongdoing and liability. Premier Staffing Services later filed an amended answer (Doc. No. 18). On July 11, 2013, Streeter filed a proposed amended complaint (Doc. No. 22) that sought to replace Premier Staffing Services with Premier. Premier Staffing Services filed a response (Doc. No. 24) indicating that it did not object to this change, as Premier is the correct defendant. As such, I granted the motion to amend by order (Doc. No. 26) filed July 23, 2013. Premier then filed an answer and affirmative defenses (Doc. No. 30) with regard to the third amended complaint. Premier admitted that it had an employment relationship with Streeter but denied wrongdoing and liability.

Meanwhile, Tur-Pak Foods, Inc. (Tur-Pak), filed a pre-answer motion to dismiss (Doc. No. 14) on May 28, 2013. Because the motion referenced materials outside the pleadings, it was converted to a motion for summary judgment on May 29, 2013, and Tur-Pak was directed (Doc. No. 17) to file additional supporting materials as required by the rules of procedure. Tur-Pak filed those materials (Doc. No. 19) on June 4, 2013. Streeter's deadline for resisting Tur-Pak's motion for summary judgment was June 28, 2013. *See* Local Rule 56(b). On July 29, 2013, with no resistance having been filed, Streeter was cautioned (Doc. No. 31) that the motion could be granted as unresisted if he did not submit his resistance by August 9, 2013. Streeter did not file a resistance.

On August 30, 2013, the parties submitted a proposed scheduling order and discovery plan that, among other things, included their unanimous consent to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3). Accordingly, an order of reference to me (Doc. No. 36) was filed September

3, 2013. On September 6, 2013, I entered an order (Doc. No. 38) granting Tur-Pak's unresisted motion for summary judgment and dismissing it from this case. This leaves Premier as the only remaining defendant. Trial is scheduled to begin March 9, 2015.

### III. UNDISPUTED FACTS

Premier has filed a statement of undisputed material facts (Doc. No. 43-2) supported by relevant evidentiary materials (Doc. No. 43-3). Because Streeter has not filed a response, all of those facts are deemed admitted for purposes of Premier's motion for summary judgment. *See* Local Rule 56(b). Thus, the undisputed facts are as follows:

1. Streeter is a former employee of Premier.

2. Premier is a staffing agency that hires employees and contracts these employees to work for a third-party business with which Premier has an existing contractual relationship.

3. Streeter previously worked for Premier on three occasions:

    a. March 26, 2010, to April 21, 2010

    b. October 4, 2010, to November 1, 2010

    c. December 23, 2010, to January 4, 2011

4. On each of these three occasions, Streeter was placed with Tur-Pak as a temporary worker.

5. On March 26, 2010, and December 23, 2010, Streeter signed acknowledgements of the attendance policy for employees placed at Tur-Pak and signed acknowledgements that he received a copy of the Employee Handbook.

6. The Tur-Pak attendance policy states:

    Perfect attendance the first 2 weeks of work is mandatory.
    Failure to comply may result in immediate termination.

    Effective Immediately

> **ALL** appointments and absences must be called in to Turpak Foods. Turpak Foods will use their discretion on excused or unexcused absences from work. Call-ins, tardies, etc., need to be called into Turpak Foods immediately. Funerals, doctor's appointments, etc., will require proof of absence. [emphasis in original]

7. The applicable section of the Premier Employee Handbook states:

    NO CALL/NO SHOW
    The first time that you are tardy or fail to report or call in to work will result in a written warning.

    If you fail to report or call in for two consecutive days, you will be considered to have voluntarily quit.

    The second time, within a twelve month period, that you are tardy or fail to report or call in to work will result in termination.

8. On April 21, 2010, Streeter's first employment stint with Premier ended after he failed to report or call-in to work for two consecutive days, and he was deemed to have voluntarily quit under the policies stated above.

9. On November 1, 2010, Streeter's second employment stint with Premier ended when Tur-Pak reduced its second shift staff and he was laid-off.

10. On January 4, 2011, Streeter's third employment stint with Premier ended after he again failed to report or call-in to work for two consecutive days, and he was deemed to have voluntarily quit under the policies stated above.

11. After Streeter failed to report or call-in to work for two consecutive days, he came to Premier's office and presented a doctor's note that stated he was seen at the VA Clinic on January 3 and 4, 2011, for doctors' appointments.

12. This note did not state that Streeter was medically unable to report or call-in to work on either January 3 or 4, 2011.

13. Streeter did not notify Premier or Tur-Pak – verbally or otherwise – prior to January 3 or 4, 2011, that he would be unable to work those days.

14. Streeter did not notify Premier or Tur-Pak – verbally or otherwise – on January 3 or 4, 2011, that he would not be reporting to work at Tur-Pak those days.

15. Several people – both white and nonwhite – were deemed to have voluntarily terminated their employment with Premier because they did not report or call-in to work for two consecutive days on January 3 and 4, 2011.

16. Streeter did not notify Premier – verbally or otherwise – that he was disabled.

17. Streeter did not notify Premier – verbally or otherwise – that he would like a reasonable accommodation for any disability.

18. Streeter's alleged disability is not readily ascertainable, and no one from Premier perceived him as having any disability.

19. On his employment application for Premier, when asked whether he has "a physical or mental disability for which this company needs to make reasonable accommodations in order for you to work in the position for which you are applying," Streeter put an "X" on the line indicating "No."

20. On his employment application for Premier, on the empty lines following the statement: "If yes, please describe your physical handicap/disability so we can determine if reasonable accommodations can be accomplished," Streeter wrote, "N/A."

21. The first time anyone at Premier learned of Streeter's alleged disability was after he was deemed to have voluntarily terminated his employment.

22. Streeter has admitted that he never informed Premier that he was disabled.

23. Streeter has admitted that he did not call Premier or Tur-Pak before the beginning of his scheduled shift on January 3, 2011, to notify Premier or Tur-Pak of his absence that day.

24. Streeter has admitted that he did not call Premier or Tur-Pak before the beginning of his scheduled shift on January 4, 2011, to notify Premier or Tur-Pak of his absence that day.

25. Streeter has admitted that he was medically able to call in to work on January 3 and 4, 2011.

26. Streeter has admitted that he failed to comply with the applicable call-in policy when he was absent from work on January 3 and 4, 2011.

27. Streeter acknowledged that he signed the attendance policy for employees placed at Tur-Pak on December 23, 2010.

28. Streeter filed a civil rights complaint with the Equal Employment Opportunity Commission ("EEOC") on March 17, 2011.

29. Streeter's complaint was cross-filed with the Iowa Civil Rights Commission ("ICRC") on April 6, 2011.

30. The EEOC investigated Streeter's claim and was unable to conclude that the information obtained established a violation of any statute.

## IV.   SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical"

8

under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id*. at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party

9

has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. ANALYSIS

Reading Streeter's third amended complaint (Doc. No. 27) as generously as possible, it appears that he may be asserting the following claims: (1) violation of the Americans with Disabilities Act (ADA), (2) violation of the Family and Medical Leave Act (FMLA), (3) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and (4) race and disability discrimination in violation of the Iowa Civil Rights Act (ICRA). Premier argues that Streeter cannot, as a matter of law, establish a *prima facie* case of either employment or race discrimination. After addressing those arguments, I will touch on Streeter's possible claim for relief under the FMLA.

### A. *Disability Discrimination*

To prevail on a claim of disability discrimination under either the ADA or the ICRA, a plaintiff must first establish a *prima facie* case of discrimination. *See Olsen v. Capital Region Med. Center*, 713 F.3d 1149, 1153 (8th Cir. 2013); *Casey's Gen. Stores, Inc., v. Blackford*, 661 N.W.2d 515, 519-20 (Iowa 2003). To establish that *prima facie*

case, Streeter must prove he (1) had a disability within the meaning of the relevant statute, (2) was qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability. *Hansen v. Seabee, Corp.*, 688 N.W.2d 234, 238 (Iowa 2004) (analyzing ADA claim and citing *Kincaid v. City of Omaha*, 378 F.3d 799, 804 (8th Cir. 2004)); *Casey's Gen. Stores*, 661 N.W.2d at 519-20 (stating identical elements of ICRA disability discrimination claim).

Here, Premier focuses on the third prong and points out that there is no evidence that it knew of Streeter's alleged disability. In light of this lack of knowledge, Premier argues that Streeter cannot prove he suffered an adverse employment action *because of* his disability. Premier is correct. To survive a motion for summary judgment, Streeter must point to evidence of "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder than an illegitimate criterion actually motivated the adverse employment action." *Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981, 1020 (S.D. Iowa 2006) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). It is undisputed that Premier had no knowledge of Streeter's alleged disability. Indeed, Streeter represented to Premier in his employment application that he had no disability and, therefore, needed no accommodation of any kind. Absent evidence that Premier actually knew of Streeter's alleged disability, there is no basis to find that it took adverse action because of that alleged disability. Premier is entitled to summary judgment on Streeter's claim of disability discrimination.

## B. *Race Discrimination*

"A plaintiff alleging race discrimination may survive summary judgment either by direct evidence, or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873

(8th Cir. 2010). The undisputed facts, as set forth above, include no direct evidence of discrimination. As such, Streeter's claim must be analyzed under the *McDonnell Douglas* framework. This means that to establish a *prima facie* case of race discrimination, Streeter "must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id*. at 874; *accord Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 461 (8th Cir. 2010).

Here, Premier contends that Streeter cannot establish the second or fourth elements of his *prima facie* case. With regard to the second element, Premier contends that Streeter failed, as a matter of law, to meet his employer's legitimate expectations. It notes that Streeter admits (a) that he did not call prior to his shifts on January 3 and January 4, 2011, to inform Premier that he was unable to work on those days and (b) that he failed to comply with the applicable attendance policy. As for the fourth element, Premier contends that there is no evidence of any circumstances that could give rise to an inference of discrimination, such as evidence that similarly situated employees outside the protected class were treated differently. Premier points to undisputed facts showing that six employees, some white and some nonwhite, violated Premier's attendance policy on January 3 and 4, 2011, and that all were thereby deemed to have voluntarily terminated their employment. Thus, Premier contends that it is undisputed that Premier treated similarly situated employees equally, regardless of race.

Based on the undisputed facts in the summary judgment record, Premier is correct with regard to both the second and fourth prongs of Streeter's *prima facie* case. It is undisputed that Streeter failed to meet Premier's legitimate expectations with regard to his absences on January 3 and 4, 2011. It is also undisputed that all employees who committed similar violations were treated the same, regardless of race. On this record, Premier is entitled to summary judgment on Streeter's claim of race discrimination.

## C. Family and Medical Leave Act

Premier does not specifically address the FMLA, probably because it is not at all clear from Streeter's third amended complaint that he asserts a claim under that Act. Even assuming Streeter intended to allege that Premier violated his rights under the FMLA, the undisputed facts in the record demonstrate that he would not be entitled to relief.

An employee is not covered by the FMLA until he or she has been employed by the employer for at least twelve months and worked at least 1,250 hours during that twelve-month period. *See* 29 U.S.C. § 2611(2)(A); *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 739 (2003) (FMLA leave "applies only to employees who have worked for the employer for at least one year and provided 1,250 hours of service within the last 12 months."). Here, the undisputed facts show that Streeter was employed by Premier on three separate occasions: (a) March 26, 2010, to April 21, 2010, (b) October 4, 2010, to November 1, 2010, and (c) December 23, 2010, to January 4, 2011. Streeter was not employed by Premier for at least twelve months. Indeed, his three short periods of employment totaled less than 70 calendar days over a period of about nine months. Thus, Streeter would not even arguably have been eligible to demand FMLA leave from Premier in January 2011. To the extent Streeter asserts a claim under the FMLA, Premier is entitled to summary judgment on that claim.

## VI.  CONCLUSION

For the reasons set forth herein, Premier's motion (Doc. No. 43) for summary judgment is **granted**.  This case is **dismissed with prejudice**.  Judgment shall enter against plaintiff.

**IT IS SO ORDERED.**

**DATED** this 1st day of April, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE